446

In the Matter of ROSE M. LEGGIO, Respondent, v WALF H. OGLESBY, as Superintendent of Schools, et al., Appellants.

Second Department, August 6, 1979

APPERANCES OF COUNSEL

*George W. Lipp, Jr.,* for appellants.

*James R. Sandner (Thomas C. Greble* of counsel), for respondent.

## OPINION OF THE COURT

*Per Curiam.*

In this proceeding pursuant to CPLR article 78, petitioner seeks to compel her reinstatement to the position of remedial reading teacher. Special Term directed appellants to reinstate petitioner. We agree and therefore affirm the judgment.

Section 2510 of the Education Law generally focuses on two major aspects of abolishing a position in a school system: (1) which employee should be terminated; and (2) the rights of the terminated employee to re-employment (cf. *Matter of Ward v Nyquist,* 43 NY2d 57). In dealing with which employee should be terminated, subdivision 2 of section 2510 provides that "the services of the teacher having the least seniority in the system *within the tenure of the position abolished* shall be discontinued" (emphasis supplied). Pertaining to the rights of the terminated employee, subdivision 3 essentially provides that the terminated employee shall be placed on a preferred eligible list "for appointment to a vacancy that then exists or that may thereafter occur in an office or *position similar to the one which such person filled".* (Emphasis supplied.) To the same effect is subdivision 1, which deals with the coincidental abolition of one position and creation of another position which involves the performance of similar duties. The issue on appeal is whether the concept of "similar positions" as used in subdivisions 1 and 3 for purposes of enunciating the re-employment rights of a terminated employee, should be further restricted by requiring that the similar position also be within the same tenure area.

The relevant facts have been stipulated to by the parties and may be briefly stated. On August 17, 1976 the petitioner was advised that effective September 1, 1976 she had been approved for tenure in the elementary tenure area. A notice of "Probationary Appointment", also dated August 17, 1976, advised the petitioner that for the 1976-1977 school year, she had received a probationary appointment to a position as an "Elementary (Reading F/F)" teacher. In fact, for the 1976-1977 school year, the petitioner's sole duties were as a reme-

dial reading teacher. Effective June 30, 1977, the petitioner's position as an elementary teacher was abolished and, pursuant to subdivision 2 of section 2510 and section 2585 of the Education Law, she was excessed. Also in June, 1977, the appellants hired several persons who had never before worked in the Island Trees school district, to teach remedial reading. Some of these newly appointed teachers are performing the identical duties that the petitioner performed during the 1976-1977 school year. It is further conceded that the petitioner is qualified and certified to teach remedial reading.

The petitioner argues that since she was teaching reading and there were reading positions available involving similar, indeed identical, duties, she was entitled to be appointed to such a similar position in preference to someone who has no seniority in the school system. The appellants counter that the petitioner is not entitled to a preference because the reading positions, although functionally similar, are nevertheless in a different tenure area. Citing that part of *Matter of Chauvel v Nyquist* (43 NY2d 48, 53), which suggests that the term "corresponding or similar positions" refers to the duties to be performed in the position, Special Term granted the petition. We agree.

The phrases "tenure" and "tenure area" are terms of art which signify specific, albeit imprecise, conditions of employment. To a large extent tenure, like seniority, is a means of providing job security. However, tenure is also a means of isolating areas of instruction providing the teacher with an opportunity to advance in a particular sphere of educational expertise, and providing the school administrators with a manageable and efficient means of implementing instructional programs and allocating resources. Generally, the duties performed in one tenure area are not similar to the duties performed in a different tenure area. Furthermore, there may be disparate positions, with grossly different duties, within the same tenure area. This is particularly so in the horizontal tenure areas such as secondary education, where the duties associated with one area of instruction are not similar to those associated with a different subject matter (e.g., a foreign language and science) (see *Matter of Chauvel v Nyquist, supra*).

When a position is abolished, the teacher with the least seniority in the tenure area of the abolished position must be excessed (Education Law, § 2510, subd 2). This system gives

effect to both the employees' interest in job security in their particular area of educational appointment and to the school board's interest in efficient administration. Obviously, if a drop in enrollment justifies the abolition of an elementary teaching position, it is of no utility or logic to discharge a high school teacher who may have less seniority than any of the elementary school teachers. Consequently, the concept of tenure is necessary in the determination of who should be discharged when a teaching position is abolished. It is in this context that tenure constitutes a qualification on the more general concept of seniority as meaning length of service.

Other interests are involved when a vacancy must be filled. Here the factors of tenure must be secondary to the more pervasive principle of seniority. The Education Law reflects the basic public policy that qualified persons who have served in a particular school system should generally be preferred for purposes of re-employment. Certainly, this public policy requires that the individual only be rehired for positions for which the person is qualified. Subdivisions 1 and 3 of section 2510 of the Education Law further restrict the broad policy by requiring similarity of position. Presumably, the concept of similarity is linked to considerations of experience and qualifications. However, there is no further restriction that the similar position be in the same tenure area. On the contrary, in view of the specific and technical meaning of the phrase "within the tenure of the position abolished" as used in subdivision 2 of section 2510 (cf. *Matter of Lezette v Board of Educ.*, 35 NY2d 272), the absence of such language in subdivisions 1 and 3 indicates that considerations of tenure were not to be evaluated in determining whether a vacant position is similar to the position occupied by the excessed employee. Nor is there any other indication that the phrase "similar position" should have anything other than its ordinary meaning (i.e., similarity of duties).

In the present case, the appellants are seeking to use the petitioner's designated tenure area as a sword to prevent her from being appointed to a remedial reading position wherein she would perform the identical duties as those which she performed in the guise of an elementary teacher. However, the concept of tenure was never contemplated to be used as a means of diminishing a teacher's right to employment in favor of one who has less seniority within the school district who would perform the same duties as the dismissed employee.

The general pattern that different tenure areas involved the performance of dissimilar duties must give way to the realities of the present situation, where, as a result of overlapping tenure areas, there is no distinction whatsoever between the duties performed by the petitioner during her appointment to the position of "elementary (reading)", and the duties now being performed by the newly hired remedial reading teachers. The contrary and formalistic interpretation urged by the appellants is both inequitable and contrary to the fundamental principles of seniority rights.

Thus far, we have presumed that the petitioner was serving as a permanent appointee in the elementary tenure area for the 1976-1977 school year. However, if the notice of appointment is taken at face value, the petitioner was appointed as only a probationary employee. As a probationary employee, her devotion of a substantial portion of her time to the instruction of remedial reading results in her being deemed, by operation of law, as having served in the special subject tenure area of remedial reading (see 8 NYCRR 30.8). Although this may result in a loss of seniority vis-à-vis the elementary tenure area, it would certainly entitle the petitioner to reinstatement as a remedial reading teacher in the instant circumstances.

Subdivision 3 of section 2510 of the Education Law includes only two factors as affecting an excessed teacher's right to reemployment: (1) that the vacant position be similar and (2) that the preferred eligible list be ranked in accordance with seniority, i.e., length of service. Both of these criteria have been satisfied in the instant case. No further qualification of service in a particular tenure area is statutorily mandated and we perceive no compelling policy consideration that would cause us to judicially infer such a restriction on basic seniority rights. Therefore, the judgment granting the petition for reinstatement should be affirmed.

MARGETT, J. (dissenting). This case raises a novel question with respect to the proper interpretation of subdivisions 1 and 3 of section 2510 of the Education Law. Subdivision 1 of that section provides that where a board of education abolishes a position and creates another position "for the performance of duties *similar* to those performed in the * * * position abolished", the person who had filled the former position shall generally be appointed to the newly created one. Subdivision 3 provides that where a position is abolished, the former occu-

pant shall be placed on a preferred eligible list of candidates "for appointment to a vacancy that then exists or that may thereafter occur in [a] * * * position *similar* to the one" which was formerly occupied. Appointments to such "similar" positions are made "in the order of * * * length of service in the system". The issue at bar is whether the "similar" positions contemplated by subdivisions 1 and 3 should be "similar" positions within the teacher's tenure area, or whether the statute may provide a preference for reinstatement outside of a teacher's tenure area provided the available position is "similar" to the one previously abolished. In short, must the "similar" position be within the teacher's own tenure area?

The facts are, for the most part, undisputed.[1] Effective September 1, 1973, petitioner received a regular probationary appointment to a position in the elementary tenure area. During the 1973-1974 and 1974-1975 school years, petitioner taught English as a second language. This assignment was within the elementary tenure area. Petitioner taught, *inter alia,* reading, writing and verbal communication skills. During this period the teaching of remedial reading was encompassed within the "elementary" tenure area in the Island Trees school district.

In June, 1975 appellants abolished a number of positions in the "elementary" tenure area. As a result of petitioner's "relative seniority", her services were terminated at that time. However, on August 25, 1975 petitioner was appointed part-time to duties described in the notification of appointment as "Elementary (½ day)—Kgn. teacher (part/time)" with the service area referred to as "Elementary (Kindergarten)". Petitioner served in that capacity during the first semester of the 1975-1976 school year. In February, 1976, she was appointed as a regular substitute teacher in the elementary tenure area for the second semester. The area of assignment on the notification of appointment form was referred to as "elementary". Petitioner taught fourth grade during that semester.

It bears noting, at this juncture, that effective August 1, 1975, remedial reading was established by the Board of Re-

---

1. The parties submitted a stipulated statement of facts to Special Term. The stipulation provides that "[e]xhibits and affidavits annexed to the pleadings * * * may also be considered for whatever probative value the Court chooses to accord them." Although this dissent confines itself largely to the stipulated facts, certain unrefuted statements in the affidavits are relevant to my analysis and are referred to *(infra).*

gents as a special ("vertical") tenure area (8 NYCRR Part 30). That rule was prospective in effect and applied only to new appointments. It is unclear whether appellants hired any teachers under the new regulations for the 1975-1976 school year. An affidavit from Zoila Duffy, a member of Island Trees' staff who maintains all personnel records, alleges that as of the beginning of the 1976-1977 school year, three teachers who had been excessed as "reading" teachers would have had seniority over petitioner had she sought a position as a remedial reading teacher at that time. In light of the fact that there was no vertical tenure area for remedial reading until August 1, 1975, the implication is that these three teachers were hired for the 1975-1976 school year, but that their positions were abolished at the end of that year.[2]

The events pertaining to the 1976-1977 school year, while not factually in dispute, form the nucleus of the controversy between these parties. By letter dated August 17, 1976, petitioner was advised that effective September 1, 1976, she had been approved for tenure in the *elementary* tenure area. In addition thereto, petitioner received a document from appellants entitled "Probationary Appointment." This document, also dated August 17, 1976, notified her of a "probationary appointment as: Elementary (Reading F/F)". The language "Elementary (Reading F/F)" was entered over a printed caption which reads: "(areas of assignment requiring 40% or more of duties)". A personnel report pertaining to her employment for the 1976-1977 school year refers to "Elementary— (Reading)" as the area to which she was appointed and bears the legend "Mrs. Leggio & Mr. McDonagh, hired from Preferred Eligibility List, have accumulated enough prior service to make them eligible for tenure on re-employment." It is stipulated that during the 1976-1977 school year, petitioner performed services solely as a remedial reading teacher.

By letter dated May 27, 1977, the appellant Superintendent

2. Appellants' brief does allege, by reference to the Duffy affidavit, that "[i]f petitioner's area [of tenure] had been changed to remedial reading [for the 1976-1977 school year] three other teachers hired under the new regulations the year before and then excessed would have been entitled to the position." Since the Duffy affidavit is not quite as explicit with respect to when these "reading" teachers were appointed to the "reading" tenure area, it cannot be conclusively determined that they were in fact, appointed pursuant to the new regulation. Suffice it to say, however, that nowhere in the record nor in her brief, does petitioner refute the allegation that three excessed teachers would have had seniority over her had there been an opening for a remedial reading teacher for the 1976-1977 school year.

of Schools informed petitioner that the position she now held would be abolished and her services terminated on June 30, 1977. On June 13, 1977 petitioner's position was abolished effective June 30, 1977, and she was "excessed." The area from which she was excessed was referred to by the appellants as "Elementary". The Island Trees' seniority list for the 1976-1977 school year designated petitioner as one of 29 teachers serving in the "Elementary K-6" tenure area.

A June 15, 1977 memorandum to the "Staff" from the Superintendent of Schools announced that the Island Trees school district would be accepting applications from teachers certified in "Reading." The memorandum stated that the position would be at the elementary level. Petitioner tendered an application form dated June 16, 1977, in which she listed the nature of her work during the previous (1976-1977) school year as "Elementary Rem. Reading Title I." Petitioner was thereafter interviewed for the position sought, but was notified by letter dated June 29, 1977 that the position had been filled. It appears that appellants appointed four remedial reading teachers for the 1977-1978 school year—two of them to the junior high school level, and the others to elementary schools. None of these teachers were previously employed by the district. It is stipulated that "[s]ome of the newly appointed remedial reading teachers are performing precisely the same duties performed by petitioner during the 1976-77 school year."

The instant article 78 proceeding was commenced in October, 1977. Petitioner alleges that her "position" was never really abolished as of June 30, 1977, because "the identical position was filled by a new appointee for the 1977-1978 school year." In the alternative, the petition alleges that if abolition did, in fact, occur, "petitioner should have been recalled to the position of reading teacher * * * in accordance with Section 2510 (3) of the Education Law." Both theories are based upon the claim that "petitioner received a new probationary appointment to the separate tenure area of reading effective September 1, 1976."[3]

---

3. In petitioner's reply to appellants' answer, it is stated that "[p]etitioner agrees with counsel for the [appellants'] averment that the issue to be decided is whether petitioner served in the elementary *tenure area* or reading *tenure area* during the 1976-1977 school year * * * If it is found that petitioner did serve in the reading tenure area during that year, she would be statutorily entitled to a position in that tenure area during the 1977-1978 school year. Educ. L. §§ 2510(1); 2510(3)" (emphasis supplied).

Appellants denied that petitioner had held a position in the tenure area of "reading" and further denied that any "reading" positions were abolished in 1977. It was contended that at the commencement of the 1976-1977 school year, petitioner had been returned to service as a "preferred eligible and could not have been returned to a tenure area other than that from which she had been excessed." "She never consented to a change in tenure areas and commencement of a new probationary period nor did any of the parties intend such a change. Had such a change occurred other teachers who had been excessed from the tenure area of 'reading' would have been entitled to the position given to petitioner." The affidavit of Zoila Duffy, referred to above, explained that "[t]he reason why the form entitled 'Probationary Appointment' was used when Mrs. Leggio was reappointed and recalled for the 1976/77 school year is that we needed some formal record of her reappointment and did not have any other form which would serve this purpose for a recalled teacher." In short, appellants maintained that petitioner had always been classified as a teacher in the elementary tenure area, and that subdivisions 1 and 3 of section 2510 of the Education Law could not serve to provide her with a position in the distinctly separate tenure area of remedial reading.

Special Term determined that it was unnecessary to resolve the dispute between the parties as to the tenure area in which petitioner was serving during the 1976-1977 school year. Looking solely to the language of subdivision 3 of section 2510 of the Education Law, the court held that petitioner "should have been appointed to a reading position in September of 1977" because "the duties of the position sought by Ms. Leggio (remedial reading teacher) are identical to the duties previously performed by her during the 1976/1977 school year." Reliance was placed on *Matter of Chauvel v Nyquist* (43 NY2d 48) for the notion that the "similar" position referred to in subdivision 3 of section 2510 of the Education Law need not be a "similar" position within the tenure area in which the teacher previously served.

I would reverse and dismiss the petition upon the grounds (a) that petitioner's "position" (as distinguished from her various assignments within that position) was that of an elementary school teacher, and (b) that the language employed in subdivisions 1 and 3 of section 2510 of the Education Law regarding "similar" positions should properly be con-

strued as applying to "similar" positions *within the same tenure area.*

It is a cardinal principle of construction that the practical construction given a statute by the agency charged with its enforcement " 'takes on almost the force of judicial interpretation' " *(Matter of Lezette v Board of Educ.,* 35 NY2d 272, 281; *Matter of Bork v City School Dist. of City of North Tonawanda,* 60 AD2d 13, 16) and, if not unreasonable, should be upheld by the courts *(Matter of Howard v Wyman,* 28 NY2d 434, 438). In construing subdivision 3 of section 2510 of the Education Law,[4] the Commissioner of Education has held: "The rights of a person whose services are properly terminated as the consequence of the abolition of a position are circumscribed by Education Law § 2510(3) to placement upon a preferred eligible list for appointment to a vacancy that then exists or may thereafter exist *in tenure areas where the individual has served satisfactorily" (Matter of Morse,* 14 Ed Dept Rep 267, 270; emphasis supplied; see, also, *Matter of Moore,* 15 Ed Dept Rep 475, 476-477).

Of those decisions of the Commissioner of Education which are relied on by petitioner, not one holds that subdivision 1 or 3 of section 2510 of the Education Law is applicable to available positions outside of one's tenure area *(Matter of Cesaratto,* 17 Ed Dept Rep 23; *Matter of Matthews,* 16 Ed Dept Rep 265; *Matter of Elkins,* 14 Ed Dept Rep 193; *Matter of Ward,* 13 Ed Dept Rep 273). On the contrary, in all four of those cases it was tacitly recognized that the "similar" position must be within a tenure area in which the teacher had previously served.

In *Matter of Cesaratto (supra),* petitioners had been appointed, and had served, as elementary teachers. Following abolition of petitioners' elementary teaching positions, they claimed a right of appointment, pursuant to subdivision 1 of section 2510 of the Education Law, to newly created positions entitled "reading-math tutor". In rejecting their claims, the commissioner noted (a) that the school district "should have designated these new positions as remedial reading positions" (but that the failure to do so was a mere technical defect), and

---

4. I perceive no basis upon which to distinguish the language in subdivision 3 about "similar" positions, from comparable language in subdivision 1. The relevant authority appears to have construed both sections in a parallel fashion, and petitioner does not urge that the "similar" position language of subdivision 1 should be construed any differently than that in subdivision 3.

(b) that "remedial reading is a permissible special subject area pursuant to Rules of the Board of Regents § 30.8 (13)" (17 Ed Dept Rep, at pp 28-29). "[T]he 'reading-math tutor' positions are not typical elementary teaching positions but are more narrow, specialized positions which require demonstrated competency in teaching reading and mathematics. The major goal of these teachers is to individualize the reading and mathematics programs for specified students who are experiencing difficulties in these areas. Their duties include not only tutoring of individual students with special problems in reading and mathematics but assisting teachers in resolving instructional problems and in developing new methods of instruction" (17 Ed Dept Rep, at p 28).

In *Matter of Matthews (supra),* a probationary physical education teacher was held to be entitled, pursuant to subdivisions 1 and 3 of section 2510 of the Education Law, to a newly created position in elementary physical education. The new position had been filled by another school district employee (respondent in the case) who had been employed by the district in various other capacities (albeit for a longer period of time than petitioner). The commissioner took cognizance of the fact that "[t]here is no claim that respondent was serving in the physical education tenure area" (16 Ed Dept Rep, at p 267).

In *Matter of Elkins (supra),* a case arising under subdivision 1 of section 2510, the commissioner held that the school district had "failed to demonstrate that the position of associate principal in its district is in a different tenure area than the position of assistant principal" (14 Ed Dept Rep, at p 196). And in *Matter of Ward (supra),* the commissioner could not "conclude that [the school district's] creation of the position of school community service coordinator and its appointment of another individual to such position violated petitioner's tenure rights [as a school psychologist] under Education Law § 2510(3)" (13 Ed Dept Rep, at p 276).

While the courts have held that "[i]n applying [Education Law, § 2510], broad meaning must be given to the term 'similar'," such a construction is intended "to prevent erosion of the *tenure rights* of incumbents of abolished positions" *(Matter of Bork v City School Dist.,* 60 AD2d 13, 15-16, *supra). Matter of Chauvel v Nyquist* (43 NY2d 48, *supra),* relied upon by Special Term, simply held that a teacher who was generally tenured to teach in the secondary schools, did not come

within the purview of subdivision 3 of section 2510 of the Education Law where the available positions (English and science) were not "similar" to the position she had previously filled (French). Therefore, while *Chauvel* decided that all positions within the same tenure area are not necessarily "similar" it did not address the question whether "similar" positions must perforce be within the same tenure area.

However, in a companion case, *Matter of Ward v Nyquist* (43 NY2d 57, 62), the Court of Appeals made the following pertinent observations: "[S]ubdivision 2 [of Education Law, § 2510] provides that when a position is abolished the teacher with the least seniority 'within the tenure of the position abolished shall be discontinued'. This subdivision establishes a seniority method for determining which teacher may be dismissed as a result of the abolition of a position [citation omitted]. Subdivision 3, on the other hand, deals with the problem of re-employment rights after dismissal under subdivision 2 has been effectuated. Of course the statute contemplates that prior to any re-employment consideration, dismissal will have been made in compliance with subdivision 2. Thus, it is understandable that *subdivision 3 embodies a more limited re-employment provision* in that preferential re-employment is restricted to vacancies in 'corresponding or similar positions'. The dismissal rights of subdivision 2 refer specifically to tenure area while the re-employment rights of subdivision 3 refer *only* to similar positions" (emphasis supplied).

The clear import of this language is that subdivision 3 (and by a parity of reasoning, subdivision 1) is to be more *narrowly* construed than subdivision 2, which bases dismissal rights on a teacher's "seniority * * * within the tenure of the position abolished". Yet petitioner's position results in a *broader* construction of subdivisions 1 and 3—one whereby reinstatement could occur outside of one's tenure area!

The practical implications of such a view are disturbing. A teacher with 10 years of general elementary experience, who had, on occasion, been assigned to teach reading, could conceivably take priority over a tenured remedial reading teacher with five years in that field. Of course, it could be argued that such a scenario is impossible because the elementary teacher's duties would have been dissimilar to those of the remedial reading teacher. But such a rejoinder does nothing more than recognize that different tenure areas are inherently dissimilar.

No doubt in recognition of that truism, petitioner continues to argue on appeal (notwithstanding Special Term's determination that the issue was superfluous) that she "served in the reading tenure area" during the 1976-1977 school year.[5] In support of this contention, petitioner relies heavily upon the document she received in August, 1976 entitled "Probationary Appointment". It is her position that she would not have been given a "new probationary appointment" for the upcoming school year had she been "simply continued in the elementary tenure area". She claims that her "reliance upon the notification provided her by her employer as to tenure area must be sustained."

Petitioner's focus upon this one document conveniently ignores the mass of evidence (including language within that very document) which establishes that she has consistently served in the elementary tenure area. It is beyond question that during her first three years of probationary appointment, petitioner served in the elementary tenure area. Her *assignments* varied considerably and included teaching English as a second language, kindergarten and fourth grade. Her *position* was always that of an elementary school teacher. Indeed, by letter dated the same day as the document upon which petitioner so heavily relies, she was notified that she had been approved for tenure in the elementary tenure area.

It bears noting that petitioner was "excessed" as a regular elementary school teacher in June, 1975 and that her appointments for the 1975-1976 school year were in part-time and regular substitute positions. When she was reappointed in 1976 to a regular teaching position, her reappointment would have been based on a preferred eligible list of candidates (see Education Law, § 2510) who had previously been "excessed" from positions in the elementary tenure area. Petitioner's affidavits and briefs are conspicuously silent with respect to appellants' allegations that three previously excessed "reading" teachers would have had prior entitlement had any additional remedial reading positions been created by the 1976-1977 school year. Thus it would appear that petitioner was content to consider herself an "elementary" teacher when the position to be filled was in the elementary tenure area.

The very document on which petitioner relies lists her

5. As noted in footnote 3, *supra,* counsel for petitioner conceded in the reply to appellants' answer that the question of petitioner's *tenure area* during that year was of paramount importance.

appointment as "Elementary (Reading F/F)".[6] Since this entry appears over a printed caption which reads: "(areas of assignment requiring 40% or more of duties)", one must conclude that the insertion of the word "Reading" in parentheses simply means that reading will be an area of assignment requiring 40% or more of her duties. Petitioner had simply added one more type of *assignment* to those she had performed in the past. Her *position* was still that of an elementary teacher.

Since all of petitioner's positions have been in the elementary tenure area, I believe neither subdivision 1 nor subdivision 3 of section 2510 of the Education Law mandates her reinstatement into the distinctly dissimilar area of remedial reading. Accordingly, I respectfully dissent and vote to reverse.

RABIN, J. P., GULOTTA and MARTUSCELLO, JJ., concur in *Per Curiam* opinion; MARGETT, J., dissents and votes to reverse the judgment and dismiss the proceeding on the merits, with an opinion.

Judgment of the Supreme Court, Nassau County, dated July 28, 1978, affirmed, with $50 costs and disbursements.

---

6. "F/F" stands for Federal funding.